[Sac. No. 1167.    Department One.—September 19, 1905.]

WARD LAND AND STOCK COMPANY, Respondent, v.
GEORGE W. MAPES, Appellant.

ACTION FOR CONVERSION—CONDITIONAL SALE—EVIDENCE—QUESTION FOR
JURY—SUPPORT OF VERDICT.—In an action for the conversion of
cattle sold under execution against the party in possession thereof,
where there was evidence tending to show that the possessor agreed
to feed them, and to pay for them, if he took them, and that it
was agreed that title should remain in the plaintiff until they were
paid for, the question whether the sale was conditional or absolute
was for the jury, and the evidence is sufficient to support a verdict
for the plaintiff.

ID.—INSTRUCTIONS NOT MISLEADING.—Where the only controversy at
the trial related to the question of fact whether there was a con-
dition that the title should not pass until the price was paid or
secured, and the court properly instructed the jury upon that ques-
tion as to the law of conditional sale, and of absolute sale, ac-
cording as they should find from the evidence what was the agree-
ment of the parties, it must be assumed that other parts of the
instructions relative to a "conditional sale" were intended by the
court and understood by the jury as referring to the chief sub-
ject of dispute, and not to have been too general or misleading.

ID.—POLICY OF LAW AS TO SECRET LIENS—INAPPLICABLE INSTRUCTION.
—Where there was no evidence in reference to secret liens either
by way of pledge or mortgage, an instruction as to the policy of
the law on that subject was properly rejected as inapplicable and
misleading.

ID.—INSTRUCTION INCLUDED IN CHARGE.—Where portions of the in-
struction refused might properly have been given if severed from
the inapplicable part, but such portion was substantially included
in the charge, there was no prejudice in refusing the whole of the
instruction.

ID.—MAINTENANCE OF ACTION BY FOREIGN CORPORATION—FILING OF
ARTICLES.—Where the plaintiff in the action for conversion was a
foreign corporation which had not prior to the commencement of
the action filed its articles of incorporation with the secretary of
state, it is not precluded from maintaining the action, where it
complied with such condition prior to the filing of an amended
complaint.

APPEAL from a judgment of the Superior Court of Las-
sen County.    F. A. Kelley, Judge.

The facts are stated in the opinion of the court.

Garoutte & Goodwin, for Appellant.

N. J. Barry, for Respondent.

VAN DYKE, J.—This action was brought to recover the alleged value of cattle sold to the defendant on execution as the property of E. H. Hamlin, Jr. The plaintiff claimed that the cattle so sold belonged to it, whereas the defendant claimed that the cattle belonged to Hamlin. The verdict in the court below went for the plaintiff, in the sum of $4,358.72 1/6, for which sum judgment was thereupon rendered, together with interest and costs. The appeal was taken from the judgment within sixty days upon a bill of exceptions containing the evidence. The plaintiff is a corporation organized in the state of Nevada, engaged in the business of raising and selling live-stock, particularly cattle. The corporation was managed and controlled by O. W. and A. M. Ward.

In the latter part of the winter of 1900-1901, the plaintiff brought two bunches of cattle to Honey Lake Valley, Lassen County, this state, to be fed for beef and sold. E. H. Hamlin was then engaged in buying beef cattle as the agent of W. & P. Nichols, bankers, of Dutch Flat, Placer County, California, the cattle to be disposed of by Hamlin in certain markets controlled by him. In order to meet the demands of his market it was necessary for Hamlin to secure cattle ahead, place them on feed, and be prepared to meet the demands of his market as they arose. Plaintiff made an agreement with Hamlin in reference to the sale of cattle, and set a price upon the cattle of different grades, and Hamlin agreed to pay for the feeding of the cattle, and was to have the right to take the cattle out for market in such numbers as he desired, as his needs required; but it is claimed on the part of the plaintiff and respondent that under the agreement made between it and Hamlin, before he took any cattle out of the corral, he should place a check covering the value of the cattle taken out in the Nevada Bank at Reno, Nevada, or pay the amount to one of the Ward brothers; and that it was agreed that the title to the cattle was at all times to remain in the plaintiff until payment was made by Hamlin, as stated. Hamlin became indebted to the defendant on account of feed sold to him, and the defendant supposing the cattle in ques-

tion to have been bought by Hamlin from the plaintiff, and that they were Hamlin's cattle, in an action based on such indebtedness the cattle were attached and after judgment recovered were sold upon execution, as already stated.

The contention on the part of the appellant is, that the sale of the cattle by the plaintiff to Hamlin was an absolute sale, and they, therefore, became the property of Hamlin, notwithstanding the purchase price had not been paid. On the trial, in Hamlin's testimony, he says: "I made no agreement to pay for these cattle in case I did not take them," and O. W. Ward, one of the managers of the plaintiff, says: "He agreed to pay for them if he took them." Whether the transaction between the plaintiff and Hamlin amounted to an absolute sale of the cattle, or was a mere agreement to sell, generally termed a conditional sale, was a question to be ascertained and found by the jury from the evidence produced at the trial. "An agreement to sell is a contract by which one engages, for a price, to transfer to another the title to a certain thing." (Civ. Code, sec. 1727.) It is shown in this case that the plaintiff and Hamlin agreed upon the price of the different grades of stock to be sold, and that when the prices thus fixed should be paid by Hamlin then such stock so paid for, became his. A similar question arose in *Van Allen* v. *Francis*, 123 Cal. 474, [56 Pac. 339], and the court in discussing that case says: "The nature of the contract between plaintiffs and Van Allen first invites consideration. By appellant it is insisted that it shows an absolute sale of the property; by respondent, that the contract is one of conditional sale. We think the latter construction is the true one. Conditional sales are recognized in this state to the fullest extent [citing a long list of cases]. And it is well settled that even *bona fide* purchasers from the person to whom the personal property is delivered under an executory contract of sale get no valid claim to the property" (citing cases). Benjamin on Sales, 320, says: "Where the buyer is by contract bound to do anything as a condition either precedent or concurrent on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer." Without reviewing

the evidence in detail in this case, it is enough to say that it is sufficient to support the verdict.

Appellant's counsel in his brief takes exception to instructions given by the court numbered 4, 5, 7, and 8. It is contended that the definition of a conditional sale given in some of these instructions is too broad and conflicts with that given in the others, and that the phrase "conditional sale" is used in others without qualification or definition, and that, consequently, the instructions were misleading and could only have served the purpose of mystifying the jury. It may be conceded that if the case involved a contract of sale containing conditions not affecting, or not preventing, an immediate transfer of the title, and there had been on the trial a controversy over some such conditions, some of the instructions given would have been confusing, and possibly erroneous. But the only condition of the contract of sale in question which was at all important, or about which there was any controversy at the trial, was the condition that the title to the cattle should not pass to Hamlin until the price was paid or secured. The question of the existence of this condition was the decisive point of fact in the case to be decided by the jury. Concerning this the court, in instruction 7, properly instructed the jury as follows: "7. If you find from the evidence that the sale of the cattle by plaintiff to Hamlin was intended, agreed and understood to be a conditional sale, and that the title to the cattle was not to pass or vest absolutely or unconditionally in Hamlin, then you should find for plaintiff. But if you find from the evidence that it was intended, agreed and understood by plaintiff and Hamlin that the title to the cattle was to pass to and vest in Hamlin absolutely and unconditionally, then you should find for the defendant." In view of the issues and the evidence given at the trial all the references to a "conditional sale" in the other instructions must have been intended by the court, and would necessarily have been understood by the jury, to refer to the condition concerning the transfer of title, which had been the chief subject of dispute. When so understood, all the instructions on the subject were substantially correct. It must be presumed that the jury was composed of intelligent men, and as such, they could easily understand the distinction between an absolute sale and one with a condition to be

complied with before the title passed, to which their atten-
tion was called by the instructions.

It is also contended by appellant's counsel that the court
erred in refusing to give the following instruction No. 3 asked
by defendant: ''3d. The court instructs you that conditional
sales as defined by the court are enforced by the courts of
this state when clearly established, but that the policy of the
law is against upholding secret liens and charges upon per-
sonal property; and that in this state neat cattle can be
pledged or mortgaged to secure the payment of a debt upon
the observance by the parties of certain formalities designed
by the law to insure good faith and to give notice to the world
of the character of the transaction. These provisions are, as
to pledge, that the party to be secured must retain the pos-
session of the property pledged, or some person other than
the pledgeor, must retain such possession for him; and as
to a mortgage, that it must be signed and acknowledged by
the mortgagor and must have attached thereto an affidavit by
the mortgagor and mortgagee that the same is made in good
faith and without any design to hinder, delay or defraud
creditors of the mortgagor, and it must be immediately re-
corded with the recorder of the county in which the property
affected is situated. These provisions cannot be evaded by
any mere shuffling of words. And, therefore, the court in-
structs you that where it is clear from the whole transaction
that the ownership of the property was intended to be trans-
ferred for all practical purposes, and that the seller only
intended to reserve a security for the price, any characteriza-
tion of the transaction by the parties, or any mere denial of
its legal effect, will not be regarded. The question, it is true,
is one of intention, but the intention must be collected from
the whole transaction, and not from any particular feature
of it; and if you believe from the evidence that the Ward
Land and Stock Company intended by its agreement to trans-
fer to E. H. Hamlin, Jr., or through him to W. &. D. Nichols,
the ownership of the cattle on the James Mapes place for all
practical purposes, and that its intention in making the agree-
ment was only to reserve a security for the price, then the
court instructs you that title passed from the corporation and
you must find for the defendant.''

A great portion of this offered instruction is taken up

with a statement concerning the policy of the law in refer-
ence to secret liens and charges upon personal property, and
the requirements of the law in reference to chattel mortgages
or pledges of personal property as security for indebtedness.
These questions are entirely outside of the evidence in the
case, and calculated to mislead the jury. The policy of the
law in reference to any particular question may aid the court
in its interpretation or construction of the law in any ques-
tion that may arise in any case before it; but this is not the
duty of the jury. It is the province of the jury to arrive at
and determine the ultimate facts from the evidence produced
in the case. Portions of the instruction in question, if de-
tached from the objectionable portions referred to, might
have been properly given, but they are embraced substan-
tially in those given, and, consequently, the appellant suffered
no harm in the refusal of the judge to give the instruction
in question.

The plaintiff, as already stated, is a corporation organized
in the state of Nevada and is a foreign corporation as to this
state, and had not filed its articles of incorporation in this
state, as required of foreign corporations, prior to the com-
mencement of the action, but it did do so prior to filing its
amended complaint. The language of the law is that a
foreign corporation which has not complied with said act
shall not "maintain or defend any action or proceeding in
any court of this state until such corporation shall have com-
plied with the provisions of section one of this act." Upon
this state of the case, appellant contends that a compliance
with the act in question is a condition precedent to the com-
mencement of the action, and therefore that the action should
have been dismissed. This question, however, was directly
decided by this court adversely to the contention of appellant
in *California Sav. and Loan Soc.* v. *Harris,* 111 Cal. 133, [43
Pac. 525]. In the opinion in that case it was said: "At the
commencement of this action the plaintiff had not filed the
certified copy with the county clerk of Madera County, but it
did file it with that officer several months before defendant
filed his amended answer, setting up this defense, so that at
the time this defense was pleaded by the defendant, the plain-
tiff had complied with the statute. The defense pleaded by
the defendant was, therefore, unavailing to him to prevent the

plaintiff from thereafter maintaining the action. Section 299 (Civ. Code) does not declare that the plaintiff shall not commence an action in any county, unless it has filed a certified copy in the office of the county clerk, but merely declares that it shall not maintain an action until it has filed it. To maintain an action is not the same as to commence an action, but implies that the action has already been commenced." Appellant's counsel intimate that the case just cited was not well considered, and suggest that the subsequent case of *Keystone etc. Co.* v. *Superior Court,* 138 Cal. 738, [72 Pac. 398], practically overruled the former case. This latter case involved a different question, however. The Paraiso Oil Company, a foreign corporation, had filed its petition in voluntary insolvency in the superior court of the city and county of San Francisco, and the Keystone Driller Company, its creditor, made application for a writ of prohibition to prohibit the superior court from entertaining said petition in insolvency, or acting upon the case. In the opinion, passing upon the question, it is said: "By the very terms of the Insolvent Law, a corporation whose residence is outside of the state, cannot become a voluntary insolvent inasmuch as the petition must be filed in the county in which the petitioner resides. (Insolvency Law, sec. 2.) This privilege of becoming a voluntary insolvent can be availed of only by a resident of the state, whether a natural or artificial person. The act itself declares that it is for the *relief* of insolvent debtors, as well as for the protection of creditors. The state is under no obligations to relieve a foreign corporation from its obligations, particularly of a class of the Paraiso Oil Company, very appropriately designated by counsel as a 'tramp corporation.' The only mention of 'foreign corporations' that is made in the Insolvency Law is in section 16, which is part of chapter third, entitled 'Involuntary Insolvency.' " And it was held that said foreign corporation could not become a voluntary insolvent, and that the superior court of the city and county of San Francisco had no jurisdiction to entertain its petition in that behalf, or to proceed further in the matter, and this court, therefore, ordered a peremptory writ of prohibition to issue. The case of the *California Sav. and Loan Soc.* v. *Harris,* already cited, was not referred to in the latter case, and there is nothing to show that there was any inten-

tion to overrule or qualify it. In *Ryan Live Stock etc. Co. v. Kelly*, (Kan.) 81 Pac. 470, decided August, 1905, by the supreme court of Kansas, the same question was raised as in the case at bar, and the court there say: "The plaintiff in this case is a private foreign corporation, and it was conceded upon the trial that it had not at the commencement of the action complied with the corporation laws of the state of Kansas; but it was proven that prior to the trial in the case it had complied therewith, and had received a certificate from the secretary of state evidencing that fact. The sole question presented in this case is whether the corporation, not having filed a statement and procured the certificate required by law before the commencement of the action, could comply with the law thereafter and maintain the action. The court below decided this question in the negative, and dismissed the action. Its judgment is reversed." (Citing in support of the opinion a number of cases to the same point.)

The court therefore had jurisdiction to try the cause.

Judgment affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.