[Civ. No. 79.   Third Appellate District.—December 29, 1905.]

## BOCA & LOYALTON RAILROAD COMPANY, Appellant, v. SIERRA VALLEYS RAILROAD COMPANY et al., Respondents.

CONDEMNATION OF RAILWAY CROSSINGS—ORDER GRANTING NEW TRIAL—SPECIFIED GROUND—REVIEW UPON APPEAL.—Upon an appeal from an order granting a new trial of an action to condemn two railroad crossings in which the only ground specified was error of law in admitting in evidence third amended articles of incorporation of appellant made after the filing of the amended complaint, the limitation in the order does not preclude this court from inquiring as to other grounds and whether the evidence was insufficient to support the findings where the case does not fall within any exception to the rule concerning such inquiry.

ID.—AUTHORITY UNDER FIRST AMENDED ARTICLES—AMENDED COMPLAINT—ORIGINAL NOT IN RECORD—RIGHTS OF PARTIES TO APPEAL.—Where the original complaint is not in the record upon appeal, and the appellant's original articles of incorporation justified no condemnation, but appellant's first amended articles justified the condemnation of one of the crossings, and were legally established several months previous to the filing of the amended complaint upon which issues were joined, the rights of the parties may be determined upon appeal under the amended complaint and the first amended articles.

ID.—ACKNOWLEDGMENT OF FIRST AMENDED ARTICLES—UNTENABLE OBJECTION.—The statute does not require an acknowledgment of amended articles; and where the only objection to the first amended articles of incorporation was that they had the same acknowledgment as the original articles, such objection cannot be sustained.

ID.—MAIN · LINE THROUGH TOWN—EAST CROSSING CONDEMNED ON NORTHERLY BRANCH—SUFFICIENCY OF EVIDENCE.—Where the first amended articles of appellant provided for a main line approaching a town northerly on the east side and extending through it westward and for a branch northerly from the town, and a crossing was condemned on the branch road about three-fourths of a mile eastward from the town, the condemnation was supported by evidence that the topography of the country prevented a direct north branch from the town, that a crossing by it in the town would be detrimental to both parties, and that the nearest practicable crossing was at that point.

ID.—COMPLETION OF MAIN LINE TO TOWN—NORTHERLY BRANCH PART OF IT.—Where it appears that the main line was completed to the town on the east side and was in operation before the amended complaint was filed, and that the branch line was connected with

it on the east side and diverged from it northward to the crossing condemned, for all practical purposes the branch line might be considered part of the main line to the easterly point of divergence northerly.

ID.—SECOND AND THIRD AMENDED ARTICLES NOT ADMISSIBLE TO JUSTIFY WESTWARD CROSSINGS.—Second amended articles not filed with the Secretary of State cannot be considered; and where both the second and third amended articles were made after the amended complaint was filed, the plaintiff had no right to condemn under either of them any crossings of defendant's road westward from the town or to use another distinct branch from the main line which was first definitely included in the third amended articles.

ID.—MEASURE OF RIGHT OF CONDEMNATION—PREMATURE ACTION.— Plaintiff's right to condemn is measured by the powers possessed by it at the time the action was commenced; and the action was clearly premature as to the west crossings.

ID.—ADMISSION OF CORPORATE EXISTENCE—DE FACTO CORPORATION— DUAL CAPACITY.—Where the complaint alleged and the answer admitted the averment of the due incorporation of the plaintiff, no question arises in relation to a *de . facto* corporation. There can be no such thing in law as a *de facto* power; nor can a corporation exercise simultaneously the dual capacity of a corporation *de jure* and a corporation *de facto*.

ID.—CONSTRUCTION OF CONSTITUTION.—Section 17 of article 11 of the constitution is not self-executing in the sense of authorizing the taking of land by a railroad corporation, regardless of its charter powers and of the statute providing for condemnation.

ID.—LIMITATIONS OF CHARTER—CONSTRUCTION OF BIDS.—The charter of the corporation ever remains the measure of its power. If it states the purpose to be to construct a railroad by a particular route, the purpose is limited to that route substantially as designated; and the limitation of the charter cannot be circumvented by the terms of subdivision 4 of section 1238 or section 1242 of the Code of Civil Procedure, or of section 1001 of the Civil Code.

ID.—POWERS INCIDENTAL TO CHARTER POWERS—WEST BRANCH LINE NOT AN ADJUNCT.—A west crossing on a branch line not included in the route designated by the charter applicable to the action for condemnation cannot be sustained as incidental to the powers expressly given by that charter. Such branch line, however necessary for opening contributory business, was in no sense incident to the main line provided for in the charter; nor was it an appendage or adjunct such as is referred to in subdivision 4 of section 465 of the Civil Code.

ID.—CONDEMNING PROPERTY APPROPRIATED TO PUBLIC USE—CROSSING OF RIGHT OF WAY—PRIVATE PROPERTY.—Property appropriated

by one railroad for public use for a right of way is private property; and the condemnation of a crossing thereof by another railroad company is the taking of private property for public use; and must be done, if at all, under the provisions of the law regulating eminent domain.

APPEAL from an order of the Superior Court granting a new trial. C. E. McLaughlin, Judge.

The facts are stated in the opinion of the court.

George E. Bates, and L. N. Peter, for Appellant.

Dodge & Parker, and Goodwin & Moncur, for Respondents.

CHIPMAN, P. J.—Action to condemn two crossings of two branch roads of plaintiff's railroad over the track and roadbed and right of way of defendant railroad company. Plaintiff had final judgment of condemnation. Defendants moved to set aside the judgment and for a new trial, which motion was granted and the appeal is from the order, on bill of exceptions.

The question presented is: Whether by the original and amended articles of incorporation, or either of them, plaintiff was authorized to maintain condemnation proceedings to condemn either one or both of the crossings involved. Plaintiff's original articles of incorporation were acknowledged on September 22, 1900, and were filed with the Secretary of State September 25, 1900, and provided for constructing a railroad from the town of Boca, Nevada county, "and thence in a northerly direction through the county of Nevada into the county of Sierra, in the state of California, to a station to be known as Roberts, to be built about two miles easterly of the present town of Loyalton, in said Sierra county." The principal place of business was named at the city and county of San Francisco. The articles were first amended by vote of the directors and written assent of all the stockholders on January 9, 1903, and were filed in the office of the county clerk of the city and county of San Francisco on January 12, 1903, and filed in the office of the Secretary of State on January 13, 1903, and provided for an extension of the main line of the road "from a point in the town of Boca, in Nevada

county, thence in a northerly direction, through the county of Sierra, to the town of Beckwith, in Plumas county, in said state, and thence in a generally westerly direction along the Feather river, Spring Garden creek, and Spanish creek, to the town of Quincy, in Plumas county, in said state, a distance of about eighty miles; and also running in a northerly direction from the town of Beckwith a distance of about thirty-five miles.'' The second amended articles described the main line as in the first amended articles, and further provided: ''Also an intermediate Branch Broad Gauge Railroad to leave the main track of the Boca and Loyalton Railroad at a point thereon about three-fourths of a mile easterly from the town of Beckwith, in Plumas County, California, and in section twenty-five (25), township twenty-three (23) north of range fourteen (14) east, M. D. M., and running thence across a portion of Sierra Valley and across the Sierra Valley Railway, and its right of way, in a general northerly direction through Red Clover Valley to Squaw Queen Valley; thence in a general northerly direction through Last Chance Valley to a point on the head of Indian Creek (describing it), its intended terminal; a total distance of about thirty-five miles, the entire length of said branch being in Plumas county, California. Also, an intermediate Branch Broad Gauge Railroad to leave the main line of said Boca and Loyalton Railroad track at a point thereon about two and one-half miles westerly from the town of Beckwith, in Plumas county, California, section twenty-eight (28), township twenty-three (23) north, range fourteen (14) East, M. D. M., near Grizzly creek; thence following up said Grizzly creek in a general northwesterly direction through said Grizzly Valley to a point at the northwest end of said Grizzly Valley in section fifteen . . . its intended terminal, making a total distance of about eighteen miles,'' said branch being entirely in Plumas county. It is further provided: ''That the estimated length of said road is eighty (80) miles, and of said intermediate branches fifty-three (53) miles, making a total length of said road and branches of one hundred and thirty-three miles.'' The articles were amended in a manner similar to the first amendment and were dated February 26, 1904, were filed in the clerk's office at the city and county of San Francisco on February 27, 1904, but bear no evidence of

filing with the Secretary of State. They were filed with the .clerk in the action February 29, 1904, during the trial. The third amended articles were similarly made and on the same day as the second amended articles and describe the road and its branches the same as the second amended articles, and a copy thereof was filed with the Secretary of State February 29, 1904. They were admitted in evidence on the last day of the trial, over the objections of defendants, as were the other amended articles. The second and third amended articles increased the capital stock and increased the mileage of track to correspond with the length of the extensions.

The only objection to the first amended articles was that the only certificate of acknowledgment attached to the said amended articles was the one attached to the original articles. The second amended articles were objected to on several grounds; 1. Because not properly acknowledged; 2. Because not filed in the counties of Nevada and Lassen, where the plaintiff's property is located; 3. Because not properly certified by the Secretary of State; 4. Because they show an increase of mileage and an increase of capital stock; 5. Because the affidavit required by sections 293, 294, and 295 of the Civil Code has not been filed nor has the certificate of the Secretary of State been shown as required by section 296 of the same code; 6. That said amended articles were attempted to be adopted February 27, 1904, while this suit was commenced on June 6, 1903, and that the certificate of acknowledgment was signed on September 22, 1900; 7. That the purported articles were not filed with the clerk of the city and county of San Francisco until February 27, 1904; said date being the date this cause was called for trial. The third amended articles were objected to upon all the foregoing grounds and particularly upon the ground that they appeared to have been filed with the Secretary of State on February 20, 1904, and are therefore "not evidence of the corporate power or right at the time this suit was commenced, to build the branch road east of Beckwith, as is claimed by the plaintiff in this suit." It does not appear when the original complaint was filed, except as stated by counsel for defendants in the above objections, but the amended complaint was filed August 24, 1903, which was some months prior to the date of the third amended

articles.   It was stated at the argument that the error of law on which the new trial was granted was that the third amended articles, having been made after the filing of the amended complaint, conferred no authority to condemn under that complaint, and were improperly admitted in evidence. The language of the order is: ''And it appearing to the court that error of law occurring at the trial and excepted to by defendant make it proper that a new trial be granted herein; it is, therefore, ordered,'' etc., setting aside the judgment and granting a new trial.

1. It is claimed by appellant that the limitation in the order of the ground upon which it was granted precludes any contention on appeal that the order may be granted for insufficiency of evidence to support the findings.   The general rule is that if there be any grounds upon which the order of the court can be upheld, the order will be sustained, irrespective of the particular ground given by the court, whether in an opinion or by a statement in the order itself.   The exception to the rule is that if the trial court, in its order granting a new trial, excludes by direct language the ground of insufficiency of evidence, and the record shows that there was a conflict of evidence, the appellate court will accept the conclusion of the trial court, and not re-examine the evidence.   We do not think the order in this case is brought within the exception.   (*Kauffman* v. *Maier,* 94 Cal. 269, [29 Pac. 481] ; *People* v. *Flood,* 102 Cal. 330, [36 Pac. 663] ; *Sherwood* v. *Kyle,* 125 Cal. 655, [58 Pac. 270] ; *Swett* v. *Gray,* 141 Cal. 69, [74 Pac. 439].)

2. Under the original articles of incorporation the northern terminal of plaintiff's road was at Roberts station, near Loyalton, some fifteen miles southerly from Beckwith.   No mention was made in the articles of any branch roads, nor does anything appear therein of an intention to build the road farther north.   No right or power to condemn crossings of defendant's road at or near Beckwith could arise out of the original articles.   Before either of the contemplated crossings could be made the main line would have to be extended all this distance beyond the original terminal, and far beyond where it was originally contemplated to build.   Nor do we understand that plaintiff claims such right, unless it

be implied from its view as to its rights and powers as a *de facto* corporation, which will be considered later.

3. The first amended articles provided for extending the road to Beckwith, thence westerly to Quincy, and also northerly from Beckwith. The only objection made by defendant to these articles was that the acknowledgment was the same as to the original articles. But the statute as to amendments does not require an acknowledgment. The statute requires the action of the board of directors with the written assent of two-thirds of the stockholders. (Civ. Code, sec. 362.) The amended articles show that "the stockholders representing and owning the entire capital stock . . . did in writing, by them signed, on the thirty-first day of December, 1902, consent," etc. The code requires also that "notice of the intention to make the amendment shall first be advertised for thirty days," but this is required only where "the assent of two-thirds of the stockholders to such amendment has not been obtained." (Civ. Code, sec. 362.)

One of the branches crossed defendant railroad company's track at a point above three-fourths of a mile easterly from the town of Beckwith, as the main line approached the town from the east. There was evidence tending to show that it was impracticable to cross said track at the town of Beckwith or at a point nearer than that selected. The court found very fully as to the general objects and purposes of the plaintiff corporation as set forth in its amended articles; that the estimated length of its main line from Boca to Quincy was about eighty miles; that the length of its branch northerly from Beckwith was about thirty-five miles and the branch leaving the main line northwesterly from Beckwith was about fifteen miles in length, and that "for the purpose of constructing, maintaining and operating the said two spur tracks or intermediate branches as aforesaid, into and through a large timber, grazing and otherwise productive area in said Plumas county, and in order that it may be entitled so to do, and to properly operate and maintain its said railroad, plaintiff of necessity needs and requires a right of way for the aforesaid uses and purposes over and across and upon the right of way of the said track of the said Sierra Valley Railroad and needs to cross, intersect and connect with the tracks and improvements on the right of way of said Sierra Valley

Railway, both in section 25, T. 23 N., R. 14 M. D. M. [the point easterly of Beckwith], and in section 28, T. 23 N., R. 14 E., M. D. M. [the point about two and one-half miles west of Beckwith]''; that the main line and its said branches are to be constructed and used and operated ''for public transportation and for the carrying of freight and passengers thereon and thereover for hire; that the use to which said rights of way and said crossings and intersections and each of them are to be applied by plaintiff is a public use authorized by law; that plaintiff is in charge of said public use and that the taking of the same is necessary to the public.'' These first amended articles were filed in the office of the county clerk of the city and county of San Francisco, and in the office of the Secretary of State and in the office of the county clerk of the county of Plumas some months prior to the filing of the amended complaint describing the two crossings; a new summons was issued, but the record does not show that it was served; it is marked filed October 19, 1903. There was, however, a demurrer to the amended complaint, which was overruled on October 26, 1903, and defendants answered on November 28, 1903. As the original complaint is not in the record, it cannot be determined whether the amended complaint states an entirely new and different cause of action, and that question does not arise.

It is the only complaint before us, and, as it was filed and issues joined on it subsequent to the first amendment of the articles of incorporation, the rights of the parties may be determined under this complaint and these articles just as they may be under subsequent amendments of the articles when we come to consider them. Section 291 of the Civil Code provides as follows: ''The articles of incorporation of any railroad . . . must also state: 1. The kind of road . . . intended to be constructed. 2. The place from and to which it is intended to be run, and all the intermediate branches. 3. The estimated length of the road.'' Here the first amended articles give the place from which (Boca) to which (Quincy, via Beckwith) the road is intended to run; they also state the intermediate branch in question. So far as we can see, the statement in the articles of an intention to run a branch line in a northerly direction from Beckwith a distance of thirty-five miles gave the plaintiff authority to

condemn a crossing for the purpose of building this branch, provided the plaintiff complied substantially with the declared intention, and the only debatable question, in our opinion, as to the east crossing is whether the starting point should have been in the town of Beckwith and the crossing within the town limits. The evidence tends to show that the topography of the country immediately north of the town would not admit of going north directly; that to cross in the town would have required the track to interfere with defendant's depot ground and switching facilities, and would have required several crossings of parallel sidetracks and switches, and would have greatly interfered with the operation of both roads; that the nearest practicable crossing point was the one chosen. The amended complaint shows the location, general route, and termini of the main line as commencing for the main line at Boca and thence northerly to Beckwith and westerly to Quincy, and of the intermediate branch line now under consideration commencing at Boca and thence to a point about three-fourths of a mile easterly from Beckwith, thence by a route northerly definitely described to its intended terminal at the head of Indian creek in a certain described section, township, and range, as shown on the map part of the complaint. The route, location, and termini were sufficiently described to meet the requirements of section 1244 of the Code of Civil Procedure, and we think the articles as first amended were sufficient to authorize the plaintiff to condemn the crossings at the point now being considered. In fact, the road was completed to Beckwith and in operation when the amended complaint was filed, and was part of the road from Boca to Beckwith, with which the branch line was connected. For all practical purposes the branch line might be considered as part of the line from Beckwith as well as the line crossing from Boca.

4. The second amended articles were not filed with the Secretary of State. The third amended articles are the same as the second, but were so filed. Both amendments were made some months after the amended complaint was filed. The second amended articles may be left out of consideration, as they were not filed with the Secretary of State. (*Wall* v. *Mines,* 130 Cal. 27, [62 Pac. 386]; *People* v. *Lodge,* 128 Cal.

262, [60 Pac. 865].)    All mooted questions, however, arise under the third amended articles.

5.    The ground chiefly urged in support of the order is that the third amended articles were not filed with the Secretary of State until long after the amended complaint was filed and hence the plaintiff had no right to condemn these crossings. We have seen that the right existed under the first amended articles to condemn the crossing east of Beckwith. It remains only to determine plaintiff's right as to the crossing west of Beckwith. This latter crossing is necessary for the construction of the branch road above described, and is about two and one-half miles westerly from Beckwith. That branch road, however, runs in a northwesterly direction, and is entirely separate and distinct from the branch running northerly from Beckwith, as well as distinct from the main line, and was not contemplated, so far as the first amended articles show, when the latter were filed. We must treat this west branch as having been first definitely included in the project of the corporation upon filing its third amendments to its articles of incorporation. We cannot agree with plaintiff that in the first amended articles it had sufficiently complied with subdivision 2, section 291, of the Civil Code, *supra,* to entitle it to construct as many branches in different directions from Beckwith as it found necessary, provided they started from the vicinity of Beckwith. We think the requirement of section 291 of the Civil Code applies equally to branches and to main lines of railroads, and when it says "all the intermediate branches," it means what it says, and does not mean that by stating where one branch is to run that other and different branches are to be deemed included in such statement. Appellant contends that if it could not proceed under the first amended articles to condemn this west crossing, it had the right either, first, to amend its articles at any time before trial and thus support its complaint, or, second, that it had the right to condemn as a *de facto* corporation.

(a)    Upon the first proposition the answer is that at the time the amended complaint was filed plaintiff was not authorized by its then articles of incorporation to maintain this action as to the west crossing. Section 297 of the Civil Code provides that "a copy of any articles of incorporation filed in pursuance of this chapter, and certified by the Secretary

of State, or by the county clerk of the county where the original articles shall have been filed must be received in all courts of this state, and other places as *prima facie* evidence of the facts therein stated.'' But when received they are but *prima facie* evidence. Plaintiff contends that ''the articles could properly be amended, after suit brought, so as to more particularly state and designate the line of the spur tracks or branch lines. The only effect of the amendment,'' it is said, ''was to particularize that which before had been general,'' and was ''not the creation of a new cause of action.'' But none of the preceding articles—neither the original nor the first amended articles—made any mention of this particular branch, and the corporation was by them clothed with no power to condemn rights of way over this west branch route. The third amended articles were not, therefore, ''in aid or explanation of a right already existing when the action was commenced.'' No such right then existed, and we do not think a corporation can begin an action to condemn a right of way along a particular route which it has not included in its articles of incorporation, and be permitted to support the complaint by subsequently amended articles which include this omitted route. Plaintiff's right to condemn is to be measured by the powers possessed by it at the time the action was commenced. The action was premature as to the west crossing. The corporation took its existence by virtue of its original articles; the amendments added nothing to its corporate entity except to enlarge its purposes, and these purposes went no further than to provide for the branches designated. There was no effort to further amend the complaint when the last amended articles were offered in evidence, if it be admitted that such amendment would have been allowable. Cases arising under section 299 of the Civil Code, such as *California Sav. etc. Soc.* v. *Harris,* 111 Cal. 133, [43 Pac. 525], and the recent case of *Ward L. & S. Co.* v. *Mapes,* 147 Cal. 747, [82 Pac. 426], do not apply. The provisions of section 299 relate to the filing of the articles in counties where the corporation is doing business, and may be waived by failure to raise the objection by proper plea (*Ward L. & S. Co.* v. *Mapes, supra*) ; but here the objection was timely, properly made and went to the existence of the power to do the thing in question. A corporation can ex-

ercise no other powers than such as are specifically granted, or such as are necessary for carrying into effect the powers granted. As to any given act, the inquiry is, first, whether it falls within the powers expressly enumerated in the certificate; or, second, whether it is necessary to the exercise of the enumerated powers. (*Vandall* v. *South San Francisco Dock Co.*, 40 Cal. 88.) The claim that the west branch was necessary to the expressed objects of the corporation cannot be maintained, for the enumerated powers included only the construction of the main line of plaintiff's road and east branch. The third amended articles brought the west branch within the corporate scheme, but it came too late to avail plaintiff under its previously filed complaint.

(b) The claim that plaintiff was a *de facto* corporation, and as such could maintain the action, is equally untenable. Plaintiff confuses the question of corporate existence with corporate power. The corporate existence was alleged and admitted; no question of *de facto* corporation arises. The allegation of the complaint is "that plaintiff is a railroad corporation, duly incorporated, organized and existing under the laws of the state of California," and this averment is admitted. The question is one of power alone, and we know of no such thing in law as a *de facto* power. There is such a thing as the exercise of power by a *de facto* corporation. The corporation in condemnation proceedings acts as the agent of the state. The power to condemn may be delegated by the state, through legislative act, to any corporation or individual who shall comply with the terms upon which the right is given. (*Moran* v. *Ross,* 79 Cal. 159, [21 Pac. 547].) No one questions the right of a corporation duly organized under the laws of the state to condemn rights of way over lines of road stated in its articles as required by section 291 of the Civil Code; but it cannot exercise this power as a duly organized corporation and at the same time exercise like power as a *de facto* corporation over branch or other lines of road not stated in its articles. Plaintiff cannot exist as a corporation and condemn the east crossing, as we have held it could, and in the same action ignore its *de jure* or statutory entity and claim the right to condemn the west crossing as a *de facto* corporation. Whatever its powers may be to condemn, they cannot exceed those given by its charter.

It would be strange, indeed, if, as a corporation *de jure*, it could not condemn under its charter, and yet could do so as a *de facto* corporation. It has been held that a *de facto* corporation cannot exercise the right of eminent domain (10 Am. & Ency. of Law, 1058), a point upon which we express no opinion, for whether this be true or not, we do not think a corporation can act simultaneously in the dual capacity of corporation *de jure* and a corporation *de facto*. Throughout this entire proceeding plaintiff has admitted as much; for it has amended its complaint and its articles so as to show a statutory corporation, and has not, except for purposes of argument, claimed to be a *de facto* corporation. There is an obvious distinction between a challenge to the corporate existence and a challenge to the power which may be exercised by the corporation, whether it be a *de facto* or *de jure* corporation. In the former case the general rule is (with exceptions) that the corporate existence may not be attacked collaterally; but it has always been held that the *ultra vires* acts of the corporation may be thus challenged, often by the corporation itself. And this rule would apply as well to a *de facto* corporation as to one *de jure*.

6. It is contended by the plaintiff that by virtue of article 12, section 17 of the constitution, section 1238, subdivision 4, and section 1242 of the Code of Civil Procedure, and section 1001 of the Civil Code, every corporation and every individual owning and engaging in the construction of a steam railroad is in charge of a public use, and, seeking to acquire property for such use, immediately becomes an agent of the state, clothed with sovereign power. The argument is that the constitution says that ''every railroad company shall have the right with its road to intersect, connect with or cross any other railroad,'' and this does not mean ''every railroad company incorporated for this or that purpose shall have the right,'' but that ''every railroad company'' without distinction may cross every other railroad; that the code provides (Civ. Code, sec. 1001) that ''any person seeking,'' etc., is ''an agent of the state'' or a ''person in charge of such use,'' etc., and hence ''we must look to the purposes for which the corporation is seeking to acquire the property, and not to the declarations in the articles of incorporation, for the test of the right to exercise the sovereign power of eminent domain.''

In the first place the section of the constitution referred to is not self-executing in the sense plaintiff would apply it. To condemn land a railroad company is to be governed by general law as in the exercise of other powers. It may be doubted whether the constitution states a right, which, without it, the railroad company would not have under the statute. In any event, the constitution would not authorize the taking of land by a railroad corporation regardless of its charter powers and regardless of the statute providing for condemnation. In the next place, we cannot agree with plaintiff that the purpose for which the corporation is seeking to acquire property is all-controlling, and that the declaration in the articles of incorporation furnishes no test of the right to condemn for any particular purpose. Suppose the charter was for a street railroad in a city, and the corporation conceived the purpose of extending its system into the country by a steam railroad. Would the fact that it was "seeking" to do this thing be sufficient to confer the right to condemn? Here and always, the charter measures the powers of the corporation which are such as the legislature gives it and are not coextensive with the powers of the individuals who compose it; it can lawfully exercise such powers only as are expressly or impliedly conferred by its charter. If the charter states the purpose to be to construct a railroad by a designated route, the purpose is limited to that route substantially as designated. The limitations of the charter cannot be circumvented by the corporation's assuming to be a "person seeking to acquire property for any of the uses mentioned" in section 1238 of the Code of Civil Procedure; the charter ever remains the measure of power. Nor, as is claimed, can the power here sought to be exercised be sustained as incidental to the powers expressly given. The branch road now under consideration was in no sense incident to the main line, nor was it an appendage or adjunct such as is referred to in section 465, subdivision 4 of the Civil Code. It was necessary for the purpose of opening contributory business and reaching new territory, but it was not necessary or incident to the operation of the main line.

Plaintiff cites *In re Johnston,* 137 Cal. 119, [69 Pac. 973], and *People* v. *Stephens,* 62 Cal. 209, in support of its contention that every railroad has the right to cross any other

railroad (Const., art. XII, sec. 17) ; that this is not a right to condemn a right to cross; and this right is absolute, the duty of the court being only to determine the amount of compensation and the point or manner of crossing. These were cases arising in cities in relation to the right to lay pipes in the streets for the supply of water or illuminating light, under section 19, article XI of the constitution. It was held that the privilege of laying pipes for the purposes mentioned "is expressly granted by the section of the constitution cited, subject to the direction of the superintendent of streets or other officer in control thereof, and under such general regulations as the municipality may prescribe for damages and indemnity for damages, and upon the condition that the municipal government shall have the right to regulate the charges thereof"; that the section is "a direct grant from the people to the persons therein designated of the right to lay pipes in the streets of a city for the purposes specified, without waiting for legislative authority." The distinction between the two provisions of the constitution, however, is obvious. In granting the use of streets which are highways and subject to the control of the state there is no taking of private property for public use; it is but devoting the highway to a use additional to that to which it is usually put and consistent with that use. In the other case there is involved the taking of private property which, it must be presumed, is to be taken in consonance with that other provision of the constitution, that "private property shall not be taken or damaged for public use without just compensation having been first made to. or paid into court, for the owner, and no right of way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be made, . . . which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in a court of record, as shall be prescribed by law." (Art. I, sec. 14.) "Property appropriated to public use" is private property (Code Civ. Proc., sec. 1240), and to condemn a right of way by one railroad over the right of way of another railroad company is the taking of private property for public use (*Memphis etc. R. R. Co.* v. *Birmingham etc. R. R. Co.*, 96 Ala. 571, [11 South. 642]) ; and must be done, if at all, under the provisions of the law regulating eminent domain.

Some other grounds in support of the order are made in the record and in the briefs of respondents, but we do not deem it necessary to notice them.

Our conclusion is: That there was sufficient evidence to support the findings as to what we have designated as the east crossing, for which the damage was adjudged to be $100, and that the judgment as to that crossing should stand; that the court erred in admitting the second and third amended articles; and that its findings as to the right of plaintiff to condemn a right of way at the so-called west crossing of defendant's road are not sustained by the evidence, and the judgment relating thereto should be set aside and vacated. The order is affirmed in so far as it grants a new trial as to the crossing herein referred to as the west crossing; the new trial upon that issue to be had on the evidence heretofore submitted in the case, and such further evidence as either party may be advised to offer. The order is reversed in so far as it grants a new trial as to the crossing referred to herein as the east crossing, and the trial court is directed to proceed with the case in accordance with the views herein expressed; the costs of this appeal to be borne equally—one-half by plaintiff and one-half by defendants.

Buckles, J., and McLaughlin, J., concurred.