321 P.2d 803]

[Civ. No. 17268.   First Dist., Div. Two.   Feb. 25, 1958.]

JOSEPH TRAPANI et al., Appellants, v. ERNEST U. HOLZER, Respondent.

Louis Pasquinelli, Edward J. Niland and Boccardo, Blum, Lull & Niland for Appellants.

Campbell, Custer, Warburton & Britton, Alfred B. Britton, Jr., and W. R. Dunn for Respondent.

KAUFMAN, P. J.—An automobile driven by the defendant Ernest Holzer collided with David Trapani, the almost 7-year-old son of the plaintiffs. David Trapani was killed. His parents, pursuant to Code of Civil Procedure, section 377, brought this wrongful death action, alleging that the defendant negligently struck and killed David who was standing still on the shoulder of the road. The defendant denied that he had been negligent, and alleged that the accident was unavoidable because the child apparently leaned or stepped into the path of

his car and that the child and his parents were contributorily negligent.

The action was tried twice. On June 3, 1954, a verdict was returned in favor of the defendant but on July 29, 1954, a new trial was granted on the ground that the evidence was insufficient to sustain the verdict. At the retrial of January 27, 1955, the jury again returned a verdict in favor of the defendant. This appeal is taken from the judgment entered on that verdict on the ground of prejudicial error due to the trial court's refusal to give certain instructions requested by the plaintiffs.

The accident occurred on June 30, 1952, a clear sunny day, at about 5:40 p. m. on Story Road, near San Jose. On that day, due to his mother's illness, David wanted to spend the day with his older brother on the Cina ranch on Story Road. Mr. Trapani drove David to the Cina home and left him with Mrs. Cina, his eldest son's mother-in-law and his son's wife with the usual instructions, knowing they would take good care of him. He did not instruct them specifically not to let David cross Story Road. David had been carefully instructed by his parents to never cross the street unless he had first looked both ways and had someone to help him and David was a careful, obedient, intelligent boy. During the afternoon, Harold Cina, the 16-year-old brother-in-law of Mr. Trapani's eldest son was disking the orchard and gave David a few rides on the tractor. David then played in the back yard. At about 5:30 p. m. Harold started to drive the tractor to the mail box on Story Road and David wanted to ride with him.

Story Road is a two lane highway with 24 feet of pavement and a gravel and dirt shoulder about five feet wide on each side of the pavement and runs northeast to southwest. For the purpose of the trial, however, it was assumed that it ran from east to west. The Cina ranch is located on the south side of Story Road west of the intersection of White Road and Story Road. About 1600-1800 feet west of that intersection, and 264 feet east of the intersection of McGinnis Avenue and Story Road, there is a driveway leading from the ranch to the south side of Story Road. Directly across from the east side of the driveway on the north shoulder of Story Road and about five feet from the edge of the pavement, there were two mail boxes about 4½ feet in height.

Harold Cina drove the tractor to the driveway and stopped, facing west about two feet south of the south edge of the

shoulder. David asked if he could go across the road to get the mail. Harold told him to wait until he had made sure it was clear and that he would call him when he thought it was clear to come back. After waiting until Harold said he could go, David crossed over to the mail boxes carrying his cap pistol in one hand and a plastic water pistol in the other. He put his guns down, climbed on the cement base in front of the mail box, took out the mail, picked up his guns and turned around. David then took two or three steps from the mail boxes toward the highway and was standing on the shoulder about one or two feet from the pavement, leaning forward and looking to the east.

At this time Harold was looking down the road and holding up his right hand calling David to stay. He testified that, keeping his right hand up, he looked west and observed some traffic at a distance and then as he turned to look east he saw a west bound car strike David with the right headlight and throw the boy 6 or 7 feet in the air causing dust and debris to fly. Harold further testified that he thought the car was not going to stop as it kept going on, but that it finally stopped west of McGinnis Road and that the defendant ran back and said: "Oh, my God, what did I hit? I thought I hit a dog."

On cross-examination Harold stated that he did not know whether just before the impact David was standing still or moving. According to one witness, David's body was found with the head facing the highway about three feet from the edge of the pavement and the feet in the orchard 96 feet west of the mail boxes and 8 feet north of the north edge of the roadway. One of David's boots was found 57 feet west of the mail boxes; the mail he had been carrying was found in the orchard at a point about 80 feet west of the mail boxes. There were also fragments of yellow plastic in the center of the roadway 40 feet from the mail boxes.

The defendant's car was a 1940 De Soto Sedan driven by the defendant, who was 69 years old at the time of the accident. He stated that on June 30, 1952, he was on his way home from his laundry business along the customary route that he drove every day. He stated he didn't think that he ever traveled faster than 35-40 miles an hour as he knew the area was congested and that there were children in the area but not in the immediate vicinity. As he turned into Story Road from White Road and neared the mail boxes, his "attention was attracted by a young man across the road on a tractor about 300 yards away who kept waving his hands."

He momentarily took his eyes off the road, but kept on driving. He further testified that he was not driving on the shoulder at any time; that when he had proceeded about two car lengths past the tractor he felt a jar and heard a thud and thought he had hit a dog. He was looking straight ahead but did not see anything flying through the air after the impact.

The defendant's car came to a stop on the west shoulder of McGinnis Road; the right front headlight and fender of his car were damaged; there were no skid marks, or tire marks on the paved portion of the highway from the Cina driveway to McGinnis Road. The defendant testified that he did not put on his brakes as he was driving so slowly. He further stated that there were shadows along the north side of Story Road up to the point of impact, and that he did not remember seeing any mail boxes. By the time the investigating officer arrived, a few minutes after the accident, David's body had been taken to the hospital and was pronounced dead on arrival. The point of impact could not be determined.

The only other witness to the accident, Miss Rosalie Van Sickle, testified that on the day in question she had been riding her bicycle westward on the south shoulder of Story Road, but because the sun was in her eyes she had crossed over to the north shoulder which was shaded by the trees in the orchard. At the time of the accident she was riding on the north shoulder about 40 feet east of the mail boxes. There was nothing to impair her visibility and she could see clearly. She did not, however, see David or notice the defendant's car pass her, although she knew that two or three cars had passed by. She only noticed a cloud of dust and something flying through the air. She then pushed her bicycle to the point where David's body lay, sent Harold for a blanket and heard the defendant say: "What have I done? I didn't see the boy. I was looking at the boy on the tractor. I thought it was going to cross the road."

Thus, as far as the key witnesses are concerned, no one saw David or the defendant's car prior to the accident. The evidence is therefore quite scant as to the vital facts and the solution must depend on inferences and presumptions. Under the evidence and reasonable inferences therefrom, there are three possibilities as to the proximate cause of the accident —negligence on the part of the defendant, negligence on the part of David or Harold, or the concurrent negligence of all. Under the circumstances, no one was negligent as a matter of law, so that the very close questions of negligence and con-

tributory negligence were factual and were therefore for the jury, under proper instructions. The only contentions made on appeal are that the trial court's failure to give certain instructions requested by the plaintiffs were the inducing cause of the defense verdict.

The first of these errors alleged by the plaintiffs is the trial court's failure to give the requested preliminary instructions on the meaning and effect of indirect or circumstantial evidence. This was clearly error on the part of the trial court but we do not consider the error prejudicial in view of all of the other instructions. The court fully instructed the jury as to the presumption of due care and its effect. Plaintiffs rely on *Arundell* v. *American Oil Fields Co.*, 31 Cal.App. 218 at 231 [160 P. 159] to argue that: "The law recognizes the force of indirect evidence which tends to establish such fact by proving another which, though not in itself conclusive, affords an inference or presumption of the existence of the fact in dispute." They ignore, however, the further statement in that case that "an inference must be founded upon fact legally proved." Here, it was for the jury to determine whether the key fact, whether the defendant in looking at the tractor veered off the highway or whether David moved in front of the defendant's car, had been proved to their satisfaction. The court here properly instructed them, albeit in nontechnical language, both at the beginning of the trial as well as at the end.

While instructions such as the one refused here when given have been approved, *Leming* v. *Oilfields Trucking Co.*, 44 Cal.2d 343 [282 P.2d 23, 51 A.L.R.2d 107], it is equally clear that their refusal is not prejudicial error. (*Mortimer* v. *Martin*, 149 Cal.App.2d 495 [308 P.2d 840].) On appeal it must be presumed that the jury was composed of intelligent people, that the jury understood the instructions given and correctly applied them to the evidence. (*Zuckerman* v. *Underwriters at Lloyds*, 42 Cal.2d 460 [267 P.2d 777]; *La Gue* v. *Delgaard*, 138 Cal.App.2d 346 [291 P.2d 960]; *Ward Land etc. Co.* v. *Mapes*, 147 Cal. 747 [82 P. 426].)

Plaintiffs next contend that the trial court erred in refusing to instruct that if David was in the exercise of ordinary care he had a right to assume that others too would perform their duty under the law, relying on *Clark* v. *State*, 99 Cal.App.2d 616 [222 P.2d 300] and *Ribble* v. *Cook*, 111 Cal.App.2d 903 [245 P.2d 593]. In the Clark case it was held reversible error to refuse a similar instruction in a wrongful death action involving the death of a pedestrian hit by a bus,

that, at dusk, had only its parking lights on. In the Ribble case, which involved an intersection accident, the evidence showed that the defendant had come to a complete stop in the intersection at a place where the decedent could cross in front of her car and the decedent could assume that the defendant had surrendered her right of way. These cases do not appear to be comparable with the instant case. Furthermore, plaintiff's instruction did not include a portion of the instruction given in those cases, that an exception exists when it is apparent to one in the exercise of ordinary care that another is not going to do his duty. The court here properly submitted the question as to whether David exercised ordinary care and carefully pointed out the degree of care required of a child of his age.

█ The third error alleged by plaintiffs is the trial court's refusal of their proffered instruction that in the exercise of ordinary care a motorist must exercise greater caution than the pedestrian. In only one of the cases cited by the plaintiffs, *Dawson* v. *LaLanne*, 22 Cal.App.2d 314 [70 P.2d 1002], was the refusal of this instruction the sole ground of reversal. In that case, however, the court had given an instruction that no greater degree of care was required of the defendant motorist than the plaintiff-pedestrian who was struck while crossing a highway. In this case, no such misleading instruction was given, and, although no instructions were given concerning the same points, we think that it was not prejudicial error to refuse this instruction, as the instruction presupposes a situation where the presence or probable presence of the pedestrian is known to the motorist. This was not proven here.

█ There is also no merit to plaintiff's further contention that the trial court erred in refusing to instruct the jury as to the duties of motorists to be vigilant and sound their horn. The matter of vigilance was adequately covered. The cases of *People* v. *Lett*, 77 Cal.App.2d 917 [177 P.2d 47] ; *Ducat* v. *Goldner*, 77 Cal.App.2d 332 [175 P.2d 914] cited by the plaintiffs are inapplicable as the pedestrian was struck while in the crosswalk. As to the statute requiring a driver to blow his horn when necessary to insure safe operation, Vehicle Code, section 671, subdivision (b), paraphrased by the plaintiffs in one of the refused instructions, that statute further provides: "Such horn shall not otherwise be used." In the case of *Freeland* v. *Jewel Tea Co.*, 118 Cal.App.2d 764 [258

P.2d 1032] cited by the plaintiffs, the presence of the children was known to the driver.

Plaintiff's final allegation of error is the trial court's refusal of the following instruction:

"Ordinarily, it is necessary to exercise greater caution for the protection and safety of a young child than for an adult person who possesses normal physical and mental faculties. One dealing with children must anticipate ordinary behavior of children. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, that they are often thoughtless and impulsive, imposes a duty to exercise a proportional vigilance and caution on those dealing with children, and from whose conduct injury to a child may result."

In all of the cases relied upon by the plaintiffs, the driver knew of the presence of the child or children. The rule as most recently stated by our Supreme Court in *Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30 at 36 [286 P.2d 21] is:

". . . if the evidence shows that a driver has knowledge of the presence of children he may be held to have been responsible although it appears that he did not see the injured child in time to prevent the injury."

The above quoted instruction was therefore properly refused as there was no evidence that the defendant saw David or should reasonably have anticipated the presence of children at that particular place and time.

Viewed as an entirety, the instructions given in the instant case present no prejudicial error and adequately cover the issues presented.

Judgment affirmed.

DRAPER, J.—I concur in the judgment. The giving of instructions defining indirect evidence and the weight to be given to it certainly would not be error. It may have been preferable procedure. But the question here is whether refusal to give them, if error, was prejudicial to plaintiffs.

Harold Cina was the only witness who testified that he saw David at the moment of impact. He testified that David was off the paved roadway, and on the unpaved shoulder, when he was struck. By inference, this is evidence that defendant's car was off the roadway when it struck David. Defendant did not see David, but testified that his car never swerved from the paved roadway. It requires one mental step to conclude that the car was therefore on the roadway at the moment of

impact, but, even if this be direct evidence, defendant's testimony was but indirect evidence that David was on the roadway when struck. All the other evidence, including the testimony of Miss Van Sickle and the evidence of damage to the car and of location of the body, the boot, and the articles David was carrying, was indirect evidence on the issues of negligence and proximate cause. But I do not see that plaintiffs' requested instruction 25 (BAJI 22) would have aided the jury in so classifying that evidence. Able lawyers and judges, having long experience with the definitions of direct and indirect evidence, have differed as to the classification of specific items of evidence. I cannot conclude that the several code sections quoted in the proposed instruction, if read to the jury here, would have identified indirect evidence sufficiently to give beneficial effect to plaintiffs' requested instruction 26 (portions of BAJI 25), stating that negligence and proximate cause may be proved by indirect evidence.

One item of indirect evidence was clearly defined to the jurors. They were instructed that David was presumed to have exercised due care, that this presumption is a form of evidence, to be weighed against any contrary evidence, and that the evidence, rather than conjecture or speculation, is required to rebut the presumption. This instruction was clear and direct. It placed upon defendant the burden of overcoming the presumption, a burden which required him to resort almost wholly to circumstantial evidence. If the somewhat stilted and confusing definition of indirect evidence could have had any effect, it seems that it would aid defendant in overcoming the well-defined presumption and the testimony of Cina, the only eyewitness. In my opinion, the refusal of these instructions was not prejudicial to plaintiffs.

DOOLING, J.—I dissent.

This is a case in which a large part of the evidence was indirect or circumstantial. The court gave no instructions on the manner in which the jury should consider such evidence, its right to draw reasonable inferences therefrom or the weight to be given to such inferences when drawn by the jury. The plaintiff requested instructions on the subject which are conceded by my associates to state the law correctly, and which the trial court refused to give. This error appears to me to be so basic, and the prejudice from the failure to give such fundamental instructions to be so obvious that nothing advanced in either opinion can convince me otherwise than

that the trial court not only committed error in this case but that the error was on such a fundamental subject that it must be held to be prejudicial.

It is basic in the jury system that the jury are the judges of the facts but that they must be guided in determining the weight and effect to be given to the evidence by the rules of law given to them in the instructions of the court.

Section 2061, subdivision 1 of the Code of Civil Procedure requires the court to instruct the jury on all proper occasions: "That their power of judging of the effect of evidence is not arbitrary, but to be exercised with legal discretion, and in subordination to the rules of evidence." Unless the jury is properly instructed on the manner in which they are required by the law to weigh the evidence and the effect to be given to it by them this basic instruction becomes meaningless and their "power of judging of the effect of evidence" will become "arbitrary" and subject to be exercised without "legal discretion." The only control over arbitrary action by the jury in the exercise of an uncontrolled discretion is to be found in proper legal instructions given by the court which they are informed that it is their legal duty to follow.

The basic instructions on circumstantial evidence requested by plaintiffs and refused by the court read:

"25. Evidence may be either direct or indirect. Direct evidence is that which proves a fact in dispute directly, without an inference or presumption, and which in itself, if true, conclusively establishes the fact. Indirect evidence is that which tends to establish a fact in dispute by proving another fact which, though true, does not of itself conclusively establish the fact in issue, but which affords an inference or presumption of its existence. Indirect evidence is of two kinds, namely, presumptions and inferences.

"A presumption is a deduction which the law expressly directs to be made from particular facts. Unless declared by law to be conclusive, it may be controverted by other evidence, direct or indirect; but unless so controverted, the jury is bound to find in accordance with the presumption.

"An inference is a deduction which the reasoning of the jury draws from the facts proved. It must be found on a fact or facts proved and be such a deduction from those facts 'as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature.' "

"26. The law makes no distinction between direct and indirect evidence as to the degree of proof required to support a finding of fact. Negligence and proximate cause both may be proved by indirect evidence, if it carries the convincing force needed to constitute a preponderance of the evidence."

Proposed instruction 25 is taken almost word for word from the Code of Civil Procedure, sections 1831, 1832, 1957, 1958, 1959, 1961. Instruction 26 states a settled principle, that the law makes no distinction as to the weight to be given to direct and indirect evidence. "[C]ircumstantial evidence may outweigh, in convincing force, . . . direct evidence. . . ." (*Scott* v. *Burke,* 39 Cal.2d 388, 398 [247 P.2d 313].)

My associates agree that these instructions correctly state the law but they severally conclude that the error in refusing to give them was not prejudicial.

I shall, as briefly as is consistent with the development of my conviction that the error must be held prejudicial, outline my reasons for my complete disagreement with this conclusion.

The witness Cina testified that the decedent minor was on the shoulder two feet from the edge of the paved portion of the highway when he was struck by the automobile. The defendant testified just as positively that he never turned his car from the pavement on to the shoulder of the road before the accident occurred. The evidence was direct in both instances and in flat contradiction. The driver's testimony, if believed, was direct proof of the fact that his car was on the pavement when the impact occurred. Cina's testimony, if believed, was direct proof that the boy was two feet from the edge of the pavement when he was struck. Both stories could not be true since if both were true the impact could not have occurred.

The jury was thus faced with a flat conflict in the only direct testimony and may well have concluded, weighing the one story against the other, that plaintiffs had not carried the burden of proof. In these circumstances the indirect evidence if given its proper weight by the jury might well have tipped the scales in plaintiffs' favor. I shall cite in this connection only the testimony of the witness Van Sickle. She testified that she did not see the impact but she did see an object flying through the air, which later proved to be the boy's body, and a cloud of dust. From this testimony of the cloud of dust the jury might reasonably have drawn an inference that the wheels of the automobile were on the dirt shoulder and not

on the pavement. Whether this, or the other circumstantial evidence, was given its proper weight by the jury, or indeed whether it was given any weight at all, we can never know, for the simple reason that the court did not give the jury the rules of law by which they should be guided in considering the circumstantial evidence or the weight which they should accord to it.

We do know that many people entertain a strong suspicion of circumstantial evidence and feel that it is less dependable and should carry less weight than direct evidence. Some or all of the jurors may have entertained this belief.

The vice in this case, which no amount of rationalization can convince me is not prejudicial error, is that in a case in which the circumstantial evidence properly considered and given its legal weight might have tipped the scales the jurors were left to their own devices, without the legal guidance which it was appellant's undoubted right to have the court give to them, to treat the circumstantial evidence in whatever manner their own unguided whims and caprice might dictate and not in the only manner in which the law expressly directs that they should treat it.

In my opinion the judgment should be reversed.

A petition for a rehearing was denied March 27, 1958. Dooling, J., was of the opinion that the petition should be granted. Appellants' petition for a hearing by the Supreme Court was denied April 23, 1958. Carter, J., was of the opinion that the petition should be granted.