[Civ. No. 24331. Second Dist., Div. One. May 18, 1960.]

EMILIE GREEN BIGGAR, Respondent, v. WILLIAM THOMAS CARNEY, Appellant.

Fogel, McInerny & Taft, Moe M. Fogel, Cornelius W. McInerny, Jr., and William J. Taft for Appellant.

Roger Bentley for Respondent.

LILLIE, J.—Plaintiff, a pedestrian, sustained personal injuries when she was struck by a car driven by the defendant. The matter was heard by a jury which found in plaintiff's favor. This appeal is from the judgment entered on the verdict and from the denial of a motion for judgment notwithstanding the verdict.

The accident occurred on the evening of May 24, 1957, at approximately 9:30 o'clock as the plaintiff was crossing Wilshire Boulevard near Westwood Village in a northerly direction between crosswalks. Wilshire at that point runs roughly east and west, being marked at the time in question by painted lines for three lanes of moving traffic both eastbound and westbound, with an additional lane on each side for parking purposes; a double white line in the center of the street separated the eastbound and westbound lanes. There is a slight downgrade westward. In the vicinity of the accident single globe ornamental lamps placed at 100-foot intervals were in operation on each side of the thoroughfare.

Plaintiff testified that she arrived home from work about 7 o'clock, consumed two drinks of vodka during the next 45 minutes and then had a light dinner. After drinking two cups of coffee with her landlord, she left in her automobile to visit a friend who lived on the north side of Wilshire immediately east of Glendon Avenue; plaintiff was wearing relatively dark-colored clothing. At approximately 9:15 she parked her car on the south side of Wilshire almost opposite her friend's apartment and about 250 feet east of the Glendon Avenue crosswalk. Alighting from her car, she observed that eastbound automobiles were stopping for the traffic light at Glendon; looking to her right, she noticed that the signal at Selby Avenue, an intersecting street roughly one and two-thirds blocks east of her, had just turned green. According to plaintiff she again looked toward Glendon Avenue and then started directly across the street; when she arrived at the center of the thoroughfare, she looked about a second or two to determine the position of westbound traffic and noticed the lights of automobiles in the lane adjacent to the double white line and the middle westbound lane; these lights she mistakenly placed at the intersection of Malcolm Avenue (immediately to

the east) which, according to a map of the area, was about 400 feet distant. Plaintiff then continued across the street without looking to her right or left until momentarily before the collision with defendant's car which was proceeding in the northernmost lane. At that moment her attention was attracted by the screeching of brakes; she stopped, turned to her right and threw up her hands. The impact followed at a point about one foot from the cars parked in the northern parking lane.

Certain of the events just related were witnessed by Officer Western whose motorcycle was parked about 50 feet east of Glendon on the south side of Wilshire. A police officer for almost 14 years, 9 of which were spent in traffic enforcement, Western had worked that particular section of Wilshire Boulevard for 3½ years prior to the accident. He testified that traffic in the area was regulated by signals which broke the flow of Wilshire traffic into "platoons" facilitating a corresponding flow of traffic across that thoroughfare. During one of these "breaks" in traffic, it seemed to the officer, plaintiff crossed the street; he testified that the moment plaintiff started to cross the street, he looked in both directions to ascertain if she was going to interfere with traffic "and there was no traffic." He described plaintiff's gait as "brisk" and "in about military cadence"; he continued watching her until she reached the middle of the street; when she reached that point, the leading car in westbound traffic (established to be that of defendant) was in the northernmost lane and he estimated its distance from plaintiff at about 400 feet. He also estimated its speed at approximately 35 miles per hour, adding that that was the general speed of cars, both eastbound and westbound, for 15 minutes prior to the accident. The officer did not recall seeing the plaintiff again until immediately prior to the impact when she was directly in the headlights of defendant's car; the vehicle, he stated, came to "a very abrupt halt." Skid marks, subsequently measured by another police officer, measured 58 feet overall.

Defendant testified that he was familiar with Wilshire Boulevard in the vicinity of the accident. Prior thereto he had brought his car to a stop at the mechanical signal at Selby and Wilshire, being the last signal prior to the accident scene; at that time his car was in the most northerly driving lane and there were other cars behind him and in the two lanes to his left. Upon leaving the Selby intersection, he remained in the same lane and was the lead car in the group of westbound vehicles. When crossing Malcolm, his estimated

speed was 30 miles per hour. He first saw the plaintiff when she was ''in the center of the roadway''—he fixed her position as ''a foot or two to the north side of the double white line,'' and there was eastbound traffic passing in back of her. Defendant further described plaintiff's actions as follows: ''She was walking when I first saw her then she went a little way then she hesitated then went ahead again; then she seemed to hesitate again almost in front of the car again.'' On impact the plaintiff fell over the right front of defendant's car.

On appeal it is contended that (1) there was no substantial evidence to support the judgment; (2) the court erroneously read an instruction requested by respondent that a greater quantum of care was required of appellant as the driver of an automobile; (3) the court erred in refusing appellant's instructions on (a) imminent peril and (b) proceeding into a known dangerous situation and (4) it was error to deny the motion for judgment notwithstanding the verdict.

■■■ Appellant argues that the facts hereinbefore summarized do not disclose any negligence on his part, although conceding that negligence is ordinarily a factual question. He was driving, he contends, at a lawful rate of speed at a place on the highway properly selected by him; he also urges that as soon as he became aware of respondent's presence in his lane of traffic he did everything humanly possible to avoid the collision, and there is corroboration of this latter claim. The driver of a vehicle is not guilty of negligence under the circumstances at bar if he did those things which a reasonably prudent person would have done under similar circumstances. However, the law requires that the operator of an automobile shall always maintain a vigilant watch for other persons and vehicles using the highway (*Watkins* v. *Nutting*, 17 Cal.2d 490, 494 [110 P.2d 384]); accordingly, under the facts here present the jury might have concluded that appellant failed to perform this duty. From appellant's own testimony it appears that he first saw respondent when she was in the middle of the thoroughfare with eastbound traffic passing behind her and, even though the estimate is vigorously disputed by appellant, the distance between the parties at that moment was fixed by Officer Western at some 400 feet; thereafter no effort was made by appellant to slacken his speed or otherwise increase his vigilance in the face of the hesitant attitude which appellant himself testified was displayed by respondent during the critical moments that preceded her

arrival in his lane of traffic. From these facts the jury could draw the inference that appellant was negligent; even though reasonable minds might differ regarding that conclusion, substantial evidence exists to support such a determination.

Appellant next asks us to conclude, assuming his negligence for argument's sake, that respondent was contributorily negligent as a matter of law. It is argued that respondent did not yield the right of way as required by section 562, subdivision (a) of the Vehicle Code.* But under that section the pedestrian still has certain rights since the statute was not intended to grant to vehicles a monopoly over streets or highways. As was said in *Jones* v. *Wray,* 169 Cal. App.2d 372, 381 [337 P.2d 226], quoting from *Lang* v. *Barry,* 71 Cal.App.2d 121 [161 P.2d 949] : "Section 562 does not prohibit a pedestrian's crossing outside of a crosswalk at any time when a motor vehicle is on the highway. 'While the duty to yield the right of way, imposed on the pedestrian by section 562, may call for a higher degree of care while crossing between intersections, the real question of fact in such a case is whether the required care has been exercised, and not merely whether or not the right of way has actually been yielded.' (Citation.) 'It cannot be said that as a matter of law a pedestrian who crosses a well-lighted business street in the middle of a block is guilty of violating the statute or of negligence proximately contributing to his injury when he proceeds on his way after observing an automobile approaching from a distance of 200 feet, with nothing to obstruct his view or that of the driver (Citation)'." It is not contended that the area of Wilshire Boulevard in question was not well lighted; additionally, as already pointed out, a police officer with considerable experience in traffic enforcement testified that "there was no traffic," eastbound or westbound, when respondent started across the thoroughfare; furthermore, when respondent reached the middle of the street the nearest westbound vehicle was considerably more than 200 feet distant—a fair estimate would place the vehicle at least 400 feet to respondent's east. The situation seems controlled by the following statement in *Watkins* v. *Nutting,* 17 Cal.2d 490, 495 [110 P.2d 384] : "Where, as in the present case, there is evidence that the injured person looked, but either did not see the approaching automobile, or saw it and

*Reporter's Note: Vehicle Code citations are to sections as numbered prior to the 1959 recodification.

misjudged its speed or distance, the question whether, under the particular circumstances then existing, he was guilty of contributory negligence is one of fact (Citations).'' The claim that respondent was intoxicated to the extent that such condition contributed to her injury is not extensively pursued; respondent was in shock when observed by appellant's witnesses, no sobriety tests were taken, and the issue was clearly a factual one for the jury's determination under proper instructions given by the court. Finally, appellant has cited several cases in which the conduct of pedestrians has been held to establish failure to use ordinary care as a matter of law. ▉ It is true that a pedestrian, before stepping from a place of safety into one of danger, must look for oncoming traffic, but it is also true that a pedestrian with an awareness of his surroundings but acting under a mistake of judgment is not necessarily negligent. In *Ferner* v. *Casalegno,* 141 Cal. App.2d 467 [297 P.2d 91], particularly relied on by appellant, the pedestrian admitted that he was intoxicated just prior to the accident, that he ''marched'' across Bayshore Highway straight ahead, without looking to the right or left, until his progress was stopped by defendant's car. The facts are hardly comparable with those at bar.

▉ Appellant's second assignment of error concerns the giving of an instruction (BAJI 201-E) which reads as follows: ''You are instructed that the plaintiff and the defendant were both chargeable only with the exercise of ordinary care, but a greater amount of such care was required of the defendant at the time of the accident in question by reason of the fact that he was driving and operating an automobile, which is an instrumentality capable of inflicting serious and often fatal injuries upon others using the highway.'' This instruction was originally approved in *Dawson* v. *Lalanne,* 22 Cal.App.2d 314 [70 P.2d 1002]. Appellant quotes from *Trapani* v. *Holzer,* 158 Cal.App.2d 1, 7 [321 P.2d 803], where the court in discussing a like instruction said: ''. . . the instruction presupposes a situation where the presence or probable presence of the pedestrian is known to the motorist''; he then argues that ''there was nothing to refute the appellant's testimony that upon seeing the respondent he immediately applied his brakes in an attempt to avoid the accident.'' He overlooks the fact, however, that he had seen respondent moments previously when she was in the center of the highway at a point when he was, according to credible testimony, some 400 feet

to the east. In *Rubalcaba* v. *Sweeney*, 168 Cal.App.2d 1 [335 P.2d 157], likewise involving a collision between an automobile and a pedestrian crossing between crosswalks, the court declared that it was error to refuse the identical instruction. As in our case, "(O)ther instructions spoke only of the obligation resting upon both the plaintiff and the defendant to use ordinary care in their conduct toward each other. It should have been called to the attention of the jury that although the degree of care, that is, ordinary care, was the same as to both, nevertheless since defendant was operating an automobile he was charged with a duty to use a greater quantum of care by reason of the added danger of the instrumentality he was propelling than the quantum of care required of plaintiff as the pedestrian (see *Dawson* v. *Lalanne*, 22 Cal.App.2d 314 [70 P.2d 1002]; *Cucinella* v. *Weston Biscuit Co., Inc.*, 42 Cal.2d 71 [265 P.2d 513].)'' (P. 5.) The contention is without merit.

A more serious question is presented by appellant's next point that it was error to refuse his requested instruction on imminent peril (BAJI 137). As the language of the instruction declares, a person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence, or the appearance, of imminent danger to himself or to others is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments (*Stickel* v. *Durfee*, 88 Cal.App.2d 402, 407-408 [199 P.2d 16]). An instruction should be given only when it is applicable to the issues raised by the pleadings or it is pertinent to some issue or theory developed by the evidence (*Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630, 633 [255 P.2d 795]). The decisive factor here is the time when appellant knew, or should have known, that an accident would occur unless preventive measures were adopted. Appellant argues that the evidence reasonably supports the inference that he was suddenly and unexpectedly confronted with an emergency when, for the first time, he realized that respondent would not keep out of the line of travel of his vehicle. He maintains that it cannot be said that he had been previously guilty of negligence *as a matter of law*—his rate of speed was not unlawful or excessive, and he was proceeding (and remained) in a lane of traffic properly selected. Under such circumstances, he claims he was entitled to the benefit of the doctrine set forth in the instruction. Respondent, on

the other hand, argues that the responsibility of appellant is determined by his conduct viewed in its entirety from the moment he first sighted respondent, some 400 feet distant, and continuing until the collision; any imminent peril, she contends, was occasioned by appellant's negligence, and the doctrine is therefore inapplicable.

 It is "usually held that whether a person has been suddenly confronted with imminent peril is a question of fact to be submitted to a jury" (*De Ponce* v. *System Freight Service,* 66 Cal.App.2d 295, 301 [152 P.2d 234]). While, as heretofore stated, the evidence justifies an inference of negligence on appellant's part, it would also reasonably support a finding that he was not negligent until the moment he concluded that respondent was not going to discontinue her progress across the street. Respondent was crossing a roadway at a point not within a marked crosswalk nor within an unmarked crosswalk at an intersection; appellant, therefore, had the right of way (Veh. Code, § 526, subd. (a)). Although the area in which the accident occurred on Wilshire Boulevard was posted with 25-mile speed limit signs, appellant was traveling 35 miles per hour. However, an officer sat by and watched traffic proceed over that area at 35 miles per hour and testified that the speed of the normal flow of traffic there at that time was 35 miles per hour and that appellant was traveling the same speed as the general flow of westbound traffic. Wilshire Boulevard at that point accommodated three lanes of moving traffic, both east and westbound, with an additional lane on each side for parking purposes. The area was well lighted and appellant's car lights were on. He stayed in his own lane of traffic and passed no cars. Faced with this evidence and the basic speed law of this state (Veh. Code, § 510), the provisions of section 511, Vehicle Code, relating to prima facie speed limits, and the obligation of a motorist not to impede or block the reasonable and normal flow of traffic (Veh. Code, § 514), we are unable to say that appellant was negligent as a matter of law merely because his speed was in excess of the limit posted in the area of the accident. (Veh. Code, § 513.) Appellant's negligence constitutes a factual question.

Although neither party has cited *Leo* v. *Dunham,* 41 Cal.2d 712 [264 P.2d 1], there is found therein an analysis of the problem which constitutes in point of time one of the most recent decisions of the Supreme Court on the subject of imminent peril. The facts are not dissimilar; too, similar arguments were presented pro and con. As in our case, Leo was

crossing the roadway outside of a crosswalk. Dunham had the right of way and had not been previously guilty of negligence as a matter of law. Leo saw Dunham's truck when it was approaching in the far lane about 300 feet distant. The court directed attention to the established rule that ''every person has a right to assume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of the law or duty by such other person.'' Continuing, ''a reasonably prudent person might well anticipate an existent danger from the approach of a truck only 300 feet away at the time he started to cross a street and would not thereafter ignore its presence (citation). Dunham, therefore, reasonably might have expected Leo to take further care for his own safety by again looking toward the approaching truck during the crossing.'' (P. 715.) For these reasons, the court concluded, it could not be said, as a matter of law, that Dunham was negligent in failing to anticipate until the truck was some 60 to 80 feet away that Leo was not going to yield the right of way, at which instant Dunham ''reasonably may be said to have been confronted unexpectedly with a sudden and imminent peril''; hence, an ''adequate basis for the instruction on imminent peril'' was shown (p. 716).

While the respondent at bar was more than 300 feet away from the headlights of approaching westbound traffic, the distance is not so disproportionate that we must completely disregard the general reasoning found in *Leo* v. *Dunham*, *supra*; furthermore, appellant's vehicle (as in the Leo case) may fairly be said to have been from 60 to 80 feet from respondent, allowing for reaction time, when he realized she was not going to yield the right of way.

 Although factually the record supported an instruction on imminent peril and the giving of the same would have been proper, in consideration of the entire record we are unable to say that failure to give the requested instruction would have altered the results. The jury found appellant was negligent, and the evidence, without question, supports such an implied finding. ''Notwithstanding the refusal to instruct on sudden peril we cannot reverse against the constitutional mandate that no judgment may be reversed for error in instructions unless the reviewing court shall be of the opinion, based on the whole record, that the error has resulted in a miscarriage of justice. The burden is on the appellant in every

case to show that error, if committed, was prejudicial, that is, that it resulted in a miscarriage of justice. Consideration of the entire cause, including the evidence as presented by the record, falls short of leading us to the opinion that failure to give the instruction on imminent peril resulted in a miscarriage of justice. Hence any error in refusing to give the instruction does not appear to be prejudicial and does not justify a reversal (*Cucinella* v. *Weston Biscuit Co., Inc.*, 42 Cal.2d 71, 82-83 [265 P.2d 513].)'' (*Edgett* v. *Fairchild*, 153 Cal.App.2d 734, 739-740 [314 P.2d 973]).

█ Complaint is also made that an instruction (BAJI 103-A) should have been given on proceeding into a known danger. The only authority cited for this contention is *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 236 [282 P.2d 69]. We agree with respondent that this instruction was not designed for accidents akin to the one at hand, but to situations involving slip and fall accidents, a contractor-workman situation (as in the case cited by appellant) and those wherein the invitor-invitee relationship arises.

█ Finally, and for reasons already appearing, it was not error to deny the motion for judgment notwithstanding the verdict. █ Such a motion may be granted only when, disregarding all conflicting evidence, and viewing the evidence in the light most favorable to the plaintiff, and indulging in all reasonable inferences that may be drawn from the evidence in plaintiff's favor, there is no substantial evidence to support the verdict (*Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 650 [122 P.2d 576]).

The judgment and order appealed from are affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied June 14, 1960, and appellant's petition for a hearing by the Supreme Court was denied July 13, 1960. Tobriner, J. pro tem.,* participated therein in place of Schauer, J. Peters, J., White, J., and Dooling, J., were of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.