[Civ. No. 10549. Third Dist. Aug. 22, 1963.]

NICHOLAS D. CALANDRI, a Minor, etc., Plaintiff and Appellant, v. THE IONE UNIFIED SCHOOL DISTRICT OF AMADOR COUNTY et al., Defendants and Respondents.

W. P. Butcher and Frank R. Crandall for Plaintiff and Appellant.

Kroloff, Brown, Belcher & Smart and William Boone for Defendants and Respondents.

PIERCE, P. J.—Two fingers and a portion of the palm and wrist of the left hand of an almost 15-year-old plaintiff were blown off when a toy cannon was fired by him unintentionally. The cannon had been made by the boy as a part of a manual training project. Action by the injured plaintiff against the school district and the shop training teacher-defendant, William Gebhardt, was predicated upon the theory that the

proximate cause of the accident was the teacher's failure to warn plaintiff regarding the dangers involved in loading and firing the cannon.

Motions for a nonsuit and for a directed verdict were denied. The jury's verdict was for defendants. A poll of the jury showed it voted 10 to 2 for the defense verdict. On plaintiff's appeal error specified relates to the court's refusal to give requested instructions and to the exclusion of photographic evidence. ██ We find error in the refusal of the court to instruct on the duty of care owed by an adult to a child and since we also hold the error to be prejudicial our statement of the evidence cannot resolve all inferences in defendants' favor. On the contrary, we must, to test whether a miscarriage of justice has resulted, state facts as a jury could reasonably have found them in plaintiff's favor had it been correctly instructed. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243]; *Aldabe* v. *Aldabe*, 209 Cal.App.2d 453, 457, 477 [26 Cal.Rptr. 208].)

██ Plaintiff was a freshman student at Ione High School. His instruction included two daily shop periods conducted by defendant Gebhardt as teacher. The students were assigned regular projects. When these had been completed, they were permitted to undertake projects of their own. Two or more years earlier a student, having obtained plans therefor from a magazine, had constructed a model bronze Revolutionary-War-type cannon. It included wheels and carriage. During 1960 three other students in plaintiff's class made similar cannons. To do this required the use of a metal lathe and drill press (used in drilling out the bore, the touch holes and "pan"). The teacher approved of this, considering it very good practice on the lathe. The cannons were made without wheels or carriages. They were mounted on blocks of wood. There was other evidence justifying an inference that these cannons were being made to be fired and that the other boys had fired them, using ball bearings as projectiles. There was also evidence that Gebhardt knew about this, although he denied such knowledge.

About three weeks before May 20, 1960, the date of the accident, plaintiff, having completed his assigned work, commenced the making of a cannon as his voluntary project. Again, although Gebhardt denied knowledge of the making of this cannon until the day it was completed, there is both direct and indirect evidence that he had earlier knowledge, and that he knew it was being made to be used as a firearm.

Plaintiff testified that he sought and obtained information from the teacher as to where gunpowder might be purchased to use in firing the cannon. He also testified that the drills he used for the bore, touch hole and "pan" had to be and were specially obtained from Gebhardt. Also there was evidence that the students were graded at least weekly on all their shop work. The teacher saw the cannon on the day it was completed and taken home. It was then fastened to a block of wood with baling wire.

Plaintiff's cannon was constructed from a cylinder of solid bronze obtained from a supply of materials kept by the school and made available to the classes for their projects. In evidence, it is 5¾ inches long, 1⅛ inch in diameter at the breech, tapering to ⅞ inch at the muzzle. The bore is slightly more than ¼ inch in diameter. There is a touch hole approximately 1/32 inch in diameter running at right angles and into the bore near the breech end. A cup-shaped "pan" about ¼ inch in diameter is at the top of the touch hole.

Gebhardt at no time warned plaintiff and, apparently, had not warned the other boys of the dangers involved in firing this type of cannon, nor had he given any instruction regarding the type of a fuse which could be used safely, nor how a fuse should be applied.

Plaintiff was not inexperienced with the use of ordinary firearms, both shotguns and rifles. He had hunted with his father and older brother. He had had no experience, however, in loading or firing a cannon of this type. He did know the purpose which powder served in a shotgun shell and he had seen the effect of the range and burst of shot from a shotgun shell when fired.

Upon leaving the school shop with his cannon on May 20, 1960, plaintiff went home and into a shed behind the house. His purpose was to load the cannon, then carry it loaded to the city limits and fire it. In the shed he took a shotgun shell apart, setting aside the shot and powder. He then muzzle-loaded the cannon, using successively powder, rag-wadding, shot and further wadding. He then mixed other powder with matchheads and worked the combination into the touch hole. He used some thin instrument for this purpose, the nature of which he could not recall.[1] Either si-

---

[1] From plaintiff's testimony it would appear he suffers a retrograde amnesia (our characterization) as to events immediately attending the accident.

multaneously or within 10 seconds thereafter the cannon fired, with the resultant injury to the boy's hand.

Plaintiff offered a standard instruction on the care required to be exercised for the safety of a child. (BAJI 148.)[2] The court refused the instruction, declaring: "Refused, X not needed." Refusal by the court to give the instruction is cited as error. This contention must be sustained. The court had given an instruction on the standard of conduct required of a child. (BAJI 147.)[3] That, however, related to the defense of contributory negligence. The refused instruction related to the standard of conduct required of an adult dealing with a child.[4] Refusal to give this instruction was held prejudicial error in *Guyton* v. *City of Los Angeles*, 174 Cal.App.2d 354 [344 P.2d 910] (hearing by Supreme Court denied) (an 11-year-old boy, bicycling, struck by a police car) and in *Morningred* v. *Golden State Co.*, 196 Cal.App.2d 130 [16 Cal.Rptr. 219] (a 4-year-old girl on a tricycle in a trailer court roadway struck by a delivery car).

Respondent contends that because the rule has been stated in cases where the accident involved automobiles, its application should be limited to operators of motor vehicles or other machinery. They suggest no reason so to distinguish; we can find none. If adults dealing with children should be required to exercise extra care so that youth shall be protected against a characteristic impulsive heedlessness, the rule

---

[2]The instruction reads as follows: "Ordinarily it is necessary to exercise greater caution for the protection and safety of a young child than for an adult person who possesses normal physical and mental faculties. One dealing with children must anticipate the ordinary behavior of children. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, that they often are thoughtless and impulsive, imposes a duty to exercise a proportional vigilance and caution on those dealing with children, and from whose conduct injury to a child might result."

[3]The instruction reads as follows: "A child is not held to the same standard of conduct as an adult and is only required to exercise that degree of care which ordinarily is exercised by children of like age, mental capacity and experience. There is no precise age at which, as a matter of law, a child comes to be held accountable for his actions by the same standard as applies to an adult. It is for you to determine the mental capacity and experience of Nicholas D. Calandri and whether his conduct was or was not such as might reasonably have been expected from a child of like age, capacity and experience, under the same or similar circumstances."

[4]The offered instruction in this case referred to a "young child." In common parlance (and by dictionary definition) a "young child" might be said to be someone younger than an adolescent. While the jury in the instant case, knowing this boy's age, could not have been confused to defendants' detriment, reference to a "youth of adolescent years" would have been a more accurate appellation.

should be applied whenever the evidence shows activities of a plaintiff which the law recognizes as creating a duty of care. There is such a duty when a school as a part of its curriculum includes instruction involving the use of dangerous instrumentalities.

In *Mastrangelo* v. *West Side U.H. School Dist.*, 2 Cal.2d 540 [42 P.2d 634], students (including plaintiff) in a high school chemistry class were instructed in the making of gunpowder. Plaintiff, a boy of good intelligence, had previously performed the experiment successfully following instruction. Later performance of the experiment with another boy, and without supervision, resulted in serious injury when potassium chlorate was substituted for potassium nitrate and when mixing instructions were deviated from. A judgment of nonsuit was reversed on appeal. The Supreme Court, adopting the opinion of this court (per Justice Thompson) held (on p. 546) that there were facts proved "from which the jury may reasonably infer that the defendant was guilty of negligence, or that the teacher was under a legal duty to warn and protect the plaintiff against the injury which he received. [Citation.] Ordinarily the presence of both negligence and contributory negligence are questions for the determination of the jury. [Citation.] Under the circumstances of this case, we are of the opinion both of these questions should have been submitted to the jury."

Recently this court in *Raymond* v. *Paradise Unified School Dist. of Butte County*, 218 Cal.App.2d 1 [31 Cal.Rptr. 847], had occasion (under quite different facts) to determine the question of the existence of a duty owed by a school district and its bus driver to supervise activities of students. The opinion (by Justice Friedman) includes an observation pertinent here (on page 6):

". . . A finding of negligence turns upon two elements, first, the existence of a duty to use care, and second, a breach of such duty by the creation of an unreasonable risk of harm. [Citations.] A third element necessary to establish actionable negligence, is proximate cause. [Citations.] Inquiry into proximate causation, however, presupposes an affirmative finding of negligence, based upon the dual occurrence of a duty and its breach. [Citation.] A duty of care, owed by the alleged wrongdoer to the injured plaintiff or to a class of which he is a member, is indispensable to negligence liability. [Citation.]

"One factor in the delineation of duty is the foresee-

ability of harm. [Citations.] Foreseeability is equally pertinent in the exploration of proximate cause, especially where an intervening act plays a contributory role in the accident. [Citations.] Divergent results are possible and judicial disagreements arise by approaching negligence determinations through the gateway of duty, on the one hand, or proximate causation on the other. [Citations.]"

▮ After a review of cases in which the different approaches appear, the opinion further states on pages 7-8): ". . . To the extent that existence of a duty of care turns on conflicting evidence as to the reasonable foreseeability of injury, the question may be one for the jury. Initially, however, presence of a duty rests upon factors other than foreseeability, and its existence is primarily for judicial determination. (*Amaya* v. *Home Ice, Fuel & Supply Co.*, 59 Cal. 2d 295, 307-310 [29 Cal.Rptr. 33, 379 P.2d 513]; *Richards* v. *Stanley, supra*, [43 Cal.2d 60, at 66, 67 (271 P.2d 23)]; *Hatch* v. *Ford Motor Co., supra*, [163 Cal.App.2d 393, 397 (329 P.2d 605)]; Prosser on Torts (2d ed.) 191-192; 2 Harper and James, The Law of Torts, 1058-1061; Green, Judge and Jury, 67-77.)"

▮ The trial court here, in submitting the question of the school district's negligence to the jury, made a preliminary determination that, accepting plaintiff's direct testimony and giving all reasonable inferences to the indirect testimony, the school district owed a duty of care. In our opinion, under the reasoning of *Mastrangelo, supra,* that preliminary determination was correct.

We think it absurd to say, as respondents contend, that these cannons, although denominated as "toys" are not dangerous instrumentalities. Proof lies in the fact that one was capable of, and did, blow off part of a boy's hand. Respondents stress the fact that the cannon did not blow up; that it functioned as it was supposed to function. The statement is only half true. It was not supposed to prematurely and unexpectedly discharge its projectiles as happened here. A jury could conclude reasonably that instruction and supervision of the making of the cannon should have included a warning as to its potentialities to maim and even kill, and particularly of the eccentricities inherent in the operation of the touch hole and "pan" and of safety practices to be observed in the fusing and firing of the cannon.

Moreover, if the teacher knew that these playthings were being made to explode gunpowder, we can find no significance,

comforting to respondents, in the fact (earnestly argued by them) that it was understood such explosions would be conducted off the school premises. Would *Mastrangelo, supra,* have been decided differently had the making of gunpowder been assigned as homework? We think not.

 Having determined that defendants owed plaintiff a duty of care, the trial court was obliged to describe the duty for the guidance of the jury in determining whether or not it had been breached. Hence plaintiff was entitled to an instruction on the standard of care owed by an adult in his dealings with a child—unless, of course, contributory negligence existed here as a matter of law, which is respondents' next contention. In support thereof, they cite *Bolar* v. *Maxwell Hardware Co.,* 205 Cal. 396 [271 P. 97, 60 A.L.R. 429]. There a boy bought a supply of gunpowder from defendant hardware store. The supplier had no other relationship, contact, or dealing with plaintiff after that. Plaintiff at home obtained a length of galvanized pipe, screwed a cap upon one end, and had a garageman bore a touch hole into the pipe. (The garageman, not sued, unlike the teacher here, warned the boy of the danger.) Plaintiff then filled the pipe with gunpowder, nails, bolts and wadding. A soda straw was also filled with powder and put into the touch hole as a fuse. A match was struck and applied, the pipe exploded and the plaintiff suffered severe injuries. It was held that plaintiff was guilty of contributory negligence as a matter of law. There were no controversial facts. The court felt that reasonable minds could not draw any conclusion other than that the boy, a normal 15-year-old, knowing that he was engaged in an exceedingly dangerous experiment, elected to pursue it. The opinion concludes with an assertion (on page 402): "It is . . . unnecessary to consider whether the sale of the powder, assuming it to have been a negligent act under the facts of this case, was the efficient, proximate cause of the injuries suffered by plaintiff minor."

The *Bolar* case was cited and rejected by the Supreme Court in *Mastrangelo* v. *West Side U. H. School Dist., supra,* 2 Cal.2d 540, at page 549. We find the facts here closer to *Mastrangelo* than to *Bolar.*

In *Ross* v. *San Francisco Unified School Dist.,* 120 Cal. App.2d 185 [260 P.2d 663], a minor was injured when reins became entangled in a buffing machine he was using in a manual training class. A buckle struck his eye and blinded him. The court (per Justice Peters) held there was not con-

tributory negligence as a matter of law. The court observed that both contributory negligence and proximate cause are normally fact questions in the absence of compelled inferences to the contrary; that this was particularly to be emphasized when a minor's alleged negligence is involved, with much more lenient·rules in favor of the minor to be applied, the court quoting, saying (on p. 191): " 'Youth is ever the time of heedlessness, of impulsiveness, and of forgetfulness.' "

The opinion of *Ross* refers to and distinguishes *Bolar* v. *Maxwell Hardware Co., supra,* and *Mathews* v. *City of Albany,* 36 Cal.App.2d 147 [97 P.2d 266] (also relied upon here by respondents), the court in *Ross* saying (on p. 193): ". . . In such cases the boy knew of the danger *and knew of the degree of the danger.* The project was conceived by the child and carried out, *secretly,* by him." (Italics added.)

Here when we assume, as we must, facts and inferences therefrom in the light favorable to plaintiff, the case is also different and distinguishable from *Bolar* and *Mathews.*

Contributory negligence, therefore, was a question of fact for the jury, as were the questions of the defendants' negligence and proximate cause; and it was error to refuse the instruction of the standard of conduct owed by an adult to a child.

 Moreover, we cannot say no miscarriage of justice has occurred. To say that a jury reasonably could have determined under the facts of this case that defendants owed a duty of care which they negligently failed to discharge, that it proximately caused plaintiff's injuries and that he himself was free from contributory negligence means that we cannot say that a result more favorable to appellant could not reasonably have been expected but for the error of instruction. (*People* v. *Briggs,* 58 Cal.2d 385 [24 Cal.Rptr. 417, 374 P.2d 257]; *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].)

 Since the case must be returned for retrial we must notice other specifications of error. Plaintiffs offered BAJI Instruction 22 revised, defining direct and circumstantial evidence. The instruction was refused and no substitute was given. It was held in *Trapani* v. *Holzer,* 158 Cal.App.2d 1, 6 [321 P.2d 803], to be error to refuse an instruction defining circumstantial evidence. The majority opinion held it was not prejudicial error under the facts of that case. (Justice Dooling in his dissent expressed the opinion it *was* prejudicial.) A revision of BAJI Instruction 22 occurred after the *Trapani* case. It appears to be an accurate statement of the law. The

discussion above shows that circumstantial evidence was an important factor of the case. Failure to give the instruction was error.

Plaintiffs also offered BAJI Instruction 21 revised, covering the question of burden of proof (with blanks completed—somewhat ambiguously—by plaintiff). The court, however, had elsewhere properly and explicitly instructed on this issue. This objection is without merit. Also without merit is the objection to the court's striking, in one of several instructions on assumption of risk, the phrase "with actual knowledge of the danger." In context the phrase was redundant. Knowledge of danger had already been stated by the court to be a necessary element of the doctrine.

Plaintiff also specifies as error the court's rejection of certain photographs offered by him showing the bloody condition of his hand immediately after the accident. Plaintiff's physician had testified in detail regarding the extent of the injury. The court's conclusion that possible prejudicial effect of the introduction of the photographs outweighed their probative value was not an abuse of discretion. (On the other hand, a contrary determination by the trial court on retrial under the facts disclosed by this record would not be an abuse of discretion either.) (*People* v. *Kemp*, 55 Cal.2d 458, 478 [11 Cal.Rptr. 361, 359 P.2d 913].)

The judgment is reversed.

Schottky, J., and Friedman, J., concurred.

A petition for a rehearing was denied September 17, 1963, and respondents' petition for a hearing by the Supreme Court was denied October 16, 1963.